# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **JEANETTE J. PAILETTE** | * | **CIVIL ACTION NO. 05-0111** |
| Versus | * | **JUDGE JAMES** |
| **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT & RECOMMENDATION

Petitioner, Jeanette J. Pailette ("Pailette"), appeals from a decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons given below, it is recommended that the decision of the Commissioner be **AFFIRMED, and this matter dismissed with prejudice**.

Introduction

Pailette filed her application for disability insurance benefits on May 2, 2003. She has a high school education and past work experience as a welder's helper. Pailette suffered a neck injury in 1988 and had an anterior cervical fusion at C5-6 in January 1989. After her surgery, Pailette continued to work as a welder's helper. Petitioner alleges that she became disabled on December 4, 2002. Pailette was 49 years old at the time of her hearing before ALJ Charles R. Lindsay. The ALJ determined that Pailette had cervical disc disease, status post anterior cervical fusion at C5-6, and carpal tunnel syndrome. The ALJ found that these impairments were

considered to be medically severe but did not meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2004). Pailette was assessed with a residual functional capacity ("RFC") for a significant range of light work. Pailette's RFC precluded her from returning to her past relevant work as a welder helper; however, a vocational expert testified that other work existed in the national economy that a person of Petitioner's age, education, RFC, and prior work experience could be expected to perform.

Petitioner appeals the ALJ's decision and alleges that the ALJ erred in applying the testimony of the vocational expert, in giving controlling weight to the opinion of a non-treating physician, and in not giving controlling weight to a treating physician.

Standard of Review; Substantial Evidence

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Secretary of Health and Human Services has established a five-step sequential evaluation process for ALJs to utilize in determining whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Court of Appeals for the Fifth Circuit, in *Loza v. Apfel*, succinctly summarized this evaluation process:

> The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity. If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry. If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. At these steps, analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If he cannot do his past work or other work, the claimant qualifies for benefits.

219 F.3d 378, 390 (5th Cir. 2000) (internal citations omitted). The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the

Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any point during the five-step review the ALJ finds the claimant disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In this case, the ALJ completed the entire five-step evaluation process. However, Pailette contends that the ALJ made three errors in rendering his decision.

Rejection of Dr. Brown's Opinion

In support of her claim for disability benefits, Pailette presented medical reports from Dr. Douglas Brown, her treating orthopedic surgeon. Pailette maintains that the ALJ improperly rejected Dr. Brown's opinion that Pailette was "100% disabled." (Tr. 146). Dr. Brown's progress notes state that "[Pailette] says there is nothing that she is qualified to do that she can perform such as office work or other light duty work. Therefore, it appears that she is 100% disabled from gainful employment for which she is qualified." (Tr. 146). The ALJ rejected this opinion by stating that "Dr. Brown's opinion is not supported by examination signs and findings, but appears to have been based solely on the claimant's subjective statements. Moreover, Dr. Brown's opinion is inconsistent with the claimant's conservative medical treatment and with the opinions of other physicians." (Tr. 32). Pailette contends that the ALJ rejected Dr. Brown's opinion without giving a detailed and written explanation according to the six factors set forth in 20 C.F.R. § 404.1527(d).[1] *See Newton v. Apfel*, 209 F.3d 448, 456-58 (5th Cir. 2000).

---

[1] When an ALJ decides not to give a treating physician's opinion controlling weight, the regulation requires consideration of the following: (1) the physician's length of treatment of the

4

Dr. Brown's opinion that Pailette is "100% disabled from gainful employment" is not a medical opinion, and thus not of the type subject to the six-factor test in 20 C.F.R. § 404.1527(d). Subsection (d) of section 404.1527, which delineates the six-factor test, is entitled "How we [the SSA] weigh medical opinions," and, by its terms, only applies to medical opinions. 20 C.F.R. § 404.1527(d). SSR 96-6p defines medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite his or her impairment(s), and the individual's physical or mental restrictions." Soc. Sec. Rul. 96-6p. Despite the apparent broad definition of medical opinions, subsection (e) states that some issues, even though medical in nature, are reserved to the Commissioner because they are tantamount to a disability finding; opinions on such issues are given no special significance. *See* 20 C.F.R. § 404.1527(e), (e)(3). As the Fifth Circuit has confirmed, these opinions include conclusory determinations that an applicant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003). While Dr. Brown's statement appears in the context of a medical progress note, his statement that Pailette was "100% disabled from gainful employment" clearly falls within the "unable to work" category reserved exclusively to ALJs; therefore, it is not a medical opinion subject to the extensive six-factor analysis. Moreover, while the statement is contained in Dr. Brown's records, it actually appears to be simply a reporting of the claimant's opinion regarding her ability to work rather than an opinion of Dr. Brown himself. Thus, the

---

claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. 20 C.F.R. § 404.1527(d).

ALJ did not err in rejecting it.

Vocational Expert's Opinion

Pailette claims that the ALJ erred in instructing the vocational expert ("VE") to assume that Petitioner could perform light work because Dr. Brown assessed Pailette with a 100% disability and Pailette testified she was unable to work, with no medical evidence to the contrary.

As discussed above, Dr. Brown's assessment of "100% disability" is not a medical opinion. As for Pailette's testimony of being unable to work, the ALJ is awarded deference toward the determination of Pailette's credibility. An ALJ's findings on credibility of the claimant and the debilitating effect of subjective symptoms, based on his first-hand observation of the claimant, are particularly within his province and entitled to judicial deference. *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988); *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). In January 1989, Dr. Brown performed an anterior cervical fusion as a result of a neck injury Pailette sustained in a car accident in 1988. After her surgery, Pailette went back to work as a welder's helper until December 2002 (Tr. 182). Pailette revisited Dr. Brown on June 23, 2003, complaining of neck, shoulder, and back pain after falling in her yard. (Tr. 151). Pailette had follow-up visits with Dr. Brown on July 7 and July 15, 2003. Dr. Brown's progress note on July 15, 2003, states that "Patient continues to have vague pains in her neck. ... She will be seen back in several months when she gets back from traveling with her husband." (Tr. 148). Dr. Brown did not see Pailette again until December 9, 2003. It was at this visit that Dr. Brown opined that Pailette was "100% disabled" and referred her to Bernie McHugh for a neurosurgery evaluation, at Pailette's request. (Tr. 146). Pailette was seen by Dr. McHugh on December 23, 2003 where

6

Dr. McHugh recommended Pailette undergo a CT myelogram. (Tr. 155-57). Pailette returned to Dr. McHugh on January 20, 2004 after undergoing a CT myelogram on December 30, 2003. Dr. McHugh reported that Pailette had "moderate to severe spondylitic changes at the level above and below her fusion site C4/5 and C6/7." Dr. McHugh recommended that she continue with "conservative treatment" and follow-up with him in 12 weeks. (Tr. 154). Pailette contends that she is disabled. However, Dr. Brown's statement that she has "vague pain" and would return "in several months when she gets back from traveling with her husband," and Dr. McHugh's recommendation that she continue with "conservative treatment" and follow-up with him in 12 weeks suggest otherwise.

> The following is Pailette's RFC assessment, as determined by the ALJ:
>
> she can perform light work, reduced by the need to wear a cervical collar during normal scheduled breaks and limitation to occasional reaching, including overhead and all directions, and frequent handling with the right hand and arm. She has no limitation with left hand. She can frequently turn and engage in up and down motion of the head and neck. She is moderately limited in the ability to maintain attention and concentration for extended periods (moderate meaning that there are some moderate limitations, but the person can still perform the activity satisfactorily).

(Tr. 32). A claimant's RFC is assessed based upon consideration of all of the evidence, including the claimant's medical records from treating and consultative physicians, as well as the testimony of the claimant and others with respect to the impact of the claimant's limitations on the claimant's ability to work. *See Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988). The ALJ is responsible for determining a claimant's RFC. *See* 20 C.F.R. § 404.1546.

When questioning the VE, the ALJ asked that the VE "assume that the person can perform no greater than light level work. Assume that the person can frequently climb, balance,

stoop, kneel, crouch and crawl. The person can occasionally reach, including overhead. Also assume that the person can frequently handle with the right hand arm but the left there is no limitation." (Tr. 197). The VE testified that a person with that RFC could work as a "furniture rental clerk" or a "counter clerk." (Tr. 197). The VE further testified that there are "approximately 42,000 jobs in the US, 2,600 in Texas and approximately 600 in Louisiana" for which Pailette would qualify. (Tr. 197-98).

Pailette argues that the ALJ erred because he did not instruct the VE that Pailette must wear a neck brace at least ten hours per day. Pailette testified that she wears the neck brace she received after her surgery in 1998 "about 10 hours a day" because she "stay[s] in pain and it helps support [her] head." (Tr. 183). However, as the ALJ correctly pointed out, none of Pailette's current medical reports stated that she needed to wear a cervical collar. (Tr. 183). As stated above, the ALJ is given judicial deference when determining the credibility of the claimant. *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988); *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). When determining Pailette's RFC, the ALJ did not find that she was required to wear a neck brace; therefore, the ALJ did not err in not instructing the VE that the neck brace was required.

<u>Dr. Barnes' Opinion</u>

Pailette argues that the ALJ erred in accepting the opinion of Dr. Frank Barnes. Pailette's medical records were submitted to Dr. Barnes, an orthopedic surgeon, for his review. As the ALJ included in his report, Dr. Barnes opined that Pailette "is capable of lifting/carrying 20 pounds occasionally and 10 pounds frequently. Standing/walking is not affected by the impairment.

8

Mrs. Pailette can sit about 6 hours in an 8-hour workday. Secondary to cervical disk disease, she is limited in her ability to perform push/pull operations with her upper extremities. She can occasionally climb, balance, kneel, crouch, crawl, and stoop. She is limited to occasional reaching in all directions (including overhead), but she is not limited in her ability to handle, finger, and feel. Dr. Barnes said that "looking up" and workplace vibrations would be painful for her. She has no visual/communicative limitations." (Tr. 15). Pailette's hearing before the ALJ was held on March 17, 2004. Dr. Barnes's report was dated May 21, 2004. (Tr. 168-75). In addition, Dr. Barnes responded that there had been no communication between him and the ALJ or the ALJ's office regarding Pailette's case prior to his responding to the interrogatories given on April 15, 2004. (Tr. 168). Dr. Barnes's opinion is essentially the same as the RFC assessment that the ALJ used when questioning the VE at Pailette's hearing. Therefore, Dr. Barnes's opinion only supports the RFC assessment that the ALJ previously determined. "The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1083-84 (5th Cir. 1981). As discussed above, the ALJ's decision to discredit the opinion of Dr. Brown is supported by substantial evidence.

The undersigned finds that the ALJ's determination is supported by substantial evidence and that the ALJ did not err in making his determination. Therefore, **for the reasons stated above, it is recommended that the Commissioner's decision to deny benefits be AFFIRMED, and that this civil action be DISMISSED with Prejudice.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have

**ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 16th day of February, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE